Erica J. Van Loon, State Bar No. 227712
Erica.VanLoon@LathropGPM.com
Andrew Y. Choung, State Bar No. 203192
Andrew.Choung@LathropGPM.com
Daniel A. Kadin, State Bar No. 311471
Daniel.Kadin@LathropGPM.com
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601

Attorneys for Defendant
Everki USA, Inc.

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TARGUS INTERNATIONAL LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>EVERKI USA, INC., a California corporation,<br>Defendant. | Case No.  8:20-cv-00641<br><br>Honorable Josephine L Staton<br><br>**DEFENDANT EVERKI USA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THIRD AFFIRMATIVE DEFENSE**<br><br>Hearing Date: October 30, 2020<br>Time: 10:30 am<br>Courtroom: 10A |

# TABLE OF CONTENTS

II. INTRODUCTION ..................................................................................1

III. EVERKI'S INEQUITABLE CONDUCT ALLEGATIONS ..........................1

IV. LEGAL STANDARD ............................................................................7

V. ARGUMENT........................................................................................8

    A. Pleading Standard for Inequitable Conduct. ...............................8

    B. Everki Adequately Alleges Inequitable Conduct.......................9

        1. Everki Adequately Alleges Materiality .........................9

        2. Everki Adequately Alleges Intent................................14

VI. CONCLUSION ...................................................................................17

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bayer Cropscience AG v. Dow Agrosiences LLC*,
  C.A. No. 10-1045 (RMB/JS), 2012 WL 1253047 (D. Del. Apr. 12, 2012) ................................................................................................. 16, 17

*Beal v. Lifetouch, Inc.*,
  No. CV 10–8454–JST, 2011 WL 995884 (C.D. Cal. Mar. 15, 2011) ...................... 8

*Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*,
  No. 3:16-cv-790-SI, 2017 WL 4803938 (D. Or. Oct. 24, 2017) ............................ 13

*Daniel v. Lennar Corp.*,
  No. 8:19-cv-00452-JLS-DRM, 2019 WL 8194735 (C.D. Cal. Oct. 16, 2019) ........................................................................................................ 8

*Delano Farms Co. v. California Table Grape Comm'n*,
  655 F.3d 1337 (Fed. Cir. 2011) ............................................................................ 15

*Fed. Deposit Ins. Corp. v. Reis*,
  No. SACV-12-2212-JST(ANx), 2013 WL 12126777 (C.D. Cal. Sept. 5, 2013) ................................................................................................................ 8

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
  No. 2:11-cv-6519, 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011) ........................... 11

*Kranos IP Corp. v. Riddell, Inc.*,
  334 F. Supp. 3d 907 (N.D. Ill. 2018) .................................................................... 12

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ....................................................................... 13, 16

*Preservation Techs. LLC v. Mindgeek USA Inc.*,
  No. CV-17-8906-DOC(JPRx), 2019 WL 8137707 (C.D. Cal. Nov. 17, 2019) ....................................................................................................... *passim*

*Sanders v. The Mosaic Co.*,
  418 F. App'x 914 (Fed. Cir. 2011) ......................................................................... 9

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

*Seville Classics, Inc. v. Neatfreak Grp., Inc.*,
No. CV-15-06237-SJO, 2016 WL 6661176 (C.D. Cal. Apr. 1, 2016).............15, 16

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
No. ED-CV-18-00356-AB(SPx), 2019 WL 3241183 (C.D. Cal. May
7, 2019) ....................................................................................................10

*Targus Grp. Int'l, Inc. v. CODi, Inc.*,
No. SACV-15-00353-CJC (Ex), 2015 WL 1269220 (C.D. Cal. Sept.
17, 2015) .............................................................................................11, 15

*Targus Int'l LLC v. Grp. III Int'l, Inc.*
(S.D. Fla. Apr. 2, 2020) .................................................................................1

*Targus Int'l LLC v. Victorinox Swiss Army, Inc.*,
No. 20-464-RFA (D. Del. Apr. 2, 2020) ................................................................1

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ...............................................................14

**Statutes**

35 U.S.C. § 102(a) ...........................................................................5, 10

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................8, 12, 14

Fed. R. Civ. P. 12..............................................................10, 11, 15, 16

Fed. R. Civ. P. 12(b)(6) ...................................................................10

Fed. R. Civ. P. 12(f)........................................................1, 7, 14, 17

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

## I.     INTRODUCTION

Plaintiff Targus International LLC ("Plaintiff") filed the instant action against Defendant Everki USA, Inc. ("Everki") on April 2, 2020, alleging infringement of U.S. Patent No. 8,567,578 ("the '578 Patent").[1]  In its Answer, Everki alleged a third affirmative defense of inequitable conduct—buttressed by *over six pages* of detailed factual allegations.  (Dkt. 14 at 6:27–13:3).  Despite these extensive allegations, Plaintiff moves to strike Everki's well-supported defense.  (*See* Dkt. 18, Plaintiff's Motion to Strike Third Affirmative Defense) (hereinafter, "Mot.").  However, Plaintiff's motion ignores most of Everki's allegations and completely misapplies Fed. R. Civ. P. 12(f).  Plaintiff cannot credibly challenge the *sufficiency* of Everki's pleading, and resorts to specious merits-based arguments concerning what it purports to be more "plausible" than Everki's allegations.  But that is not the standard, nor a basis for a motion to strike.  Plaintiff's motion is frivolous and should be denied.

## II.     EVERKI'S INEQUITABLE CONDUCT ALLEGATIONS

In response to Plaintiff's allegation that Everki infringes the '578 Patent, which is purportedly directed to TSA "checkpoint friendly" laptop cases (*see* Dkt. 1), Everki alleges that the '578 Patent is unenforceable due to inequitable conduct and unclean hands by the applicant and named inventors, Bui Phu Cuong, Todd Gormick, and Robert Shortt, and/or their representatives involved in the prosecution of these patents before the PTO.  (Dkt. 14 at 6:27–7:5).  Everki alleges that, by committing fraud during prosecution of the '578 Patent, Cuong, Gormick, Shortt, and/or their representatives violated the duty of good faith, candor, and disclosure they owed to the PTO, rendering the '578 Patent unenforceable.  (*Id.* at 7:5–9).

Specifically, Everki alleges that on March 3, 2008, the Transportation Security Administration ("TSA") of the United States Department of Homeland Security

---

[1] Plaintiff is also asserting the '578 Patent in several actions against other companies. *See, e.g.*, *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, No. 20-464-RFA (D. Del. Apr. 2, 2020); *Targus Int'l LLC v. Grp. III Int'l, Inc.* (S.D. Fla. Apr. 2, 2020).

announced plans to implement security procedures to allow travelers to pass through airport security checkpoints without having to remove their laptops from their bags. (*Id.* at 7:10–13).  That same day, the TSA publicly announced specific guidelines and specifications required for each laptop bag to comply with in order to be TSA compliant or Checkpoint Friendly, including a "Request for Information Checkpoint Friendly Laptop Bag" ("the TSA RFI") under Solicitation Number HSTS04-08-RFI-MC.[2]  (*Id.* at 7:14–19).

The TSA RFI set forth certain performance criteria for the proposed laptop bag designs, as well as certain "high-level design concepts" for bags that the TSA provided as "illustrative examples of possible solutions."  (*Id.* at 7:20–22).  One exemplary solution disclosed in the TSA RFI was: "A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt. One side of the bag would be designed to hold the laptop and nothing else."  (*Id.* at 7:22–25).  The TSA RFI further disclosed: "A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables.  The accessories would be in a separate compartment."  (*Id.* at 7:25–8:2).

Everki further alleges that Targus employees were aware of the TSA RFI no later than March 6, 2008, including because on that day Targus's head of marketing, Al Giazzon, referred to the TSA RFI as setting "the standard" for travelers' bags.  (*Id.* at 8:3–5).[3]

The TSA RFI stated that "[r]esponders to this RFI will submit sample/prototype bags and designs to TSA.  TSA will then review the sample/prototype bags and designs and use the submittals to evaluate whether it can eliminate the requirement to remove laptops from bags for certain types of bags."  (*Id.* at 8:6–9).

The TSA began a five-month collaboration with laptop bag manufacturers to

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

---

[2] The pleading directs the Court to the publicly available TSA RFI.  (Dkt. 14 at 7, n.1).
[3] The pleading also directs the Court to a publicly available article containing Mr. Giazzon's comments.  (*Id.* at 8, n.2).

2

design and develop laptop bags that comply with TSA guidelines, requirements and restrictions, including among other things: (1) a designated laptop-only section; (2) the laptop-only section completely unfolds to lie flat on the X-ray belt; (3) no metal straps, zippers or buckles inside, underneath or on top of the laptop-only section; (4) no pockets on the inside or outside of the laptop-only section; and (5) nothing packed in the laptop-only section other than the computer itself.  (*Id.* at 8:10–16).

Everki alleges that Plaintiff collaborated with the TSA to design and develop laptop bags.  (*Id.* at 8:17–18).  The TSA established three pilot airport sites in Austin, Texas (AUS), Washington Dulles area (IAD), and Ontario, California (ONT), where bag manufacturers made appointments to test bags and receive direct feedback from the TSA to refine and modify bag designs to comply with the March 2008 TSA guidelines and specifications for Checkpoint Friendly laptop bags.  (*Id.* at 8:19–23).  Everki alleges that Plaintiff made appointments for the TSA to test bags, and received feedback from the TSA.  (*Id.* at 8:24–25).

Bui Phu Cuong, Todd Gormick, and Robert Shortt, the listed inventors on the'578 Patent, were employees of Plaintiff in 2008.  (*Id.* at 9:1–3).  Everki alleges that Messrs. Cuong, Gormick, and Shortt were aware of the TSA RFI no later than March 6, 2008 and prior to February 13, 2009.  (*Id.* at 9:4–5).  Everki further alleges that the TSA RFI was the impetus of and motivation for the alleged invention; the TSA RFI was published and was widely reported; Plaintiff, the inventors, and Thompson all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009; the patent application makes reference to "the policy under the Transportation Security Administration (TSA)," "screening policies of the TSA," and "expedited procedures" to "allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700;" and Targus participated in TSA's program related to the TSA RFI for nearly a year prior to the filing of the provisional application on February 13, 2009.  (*Id.* at 9:5–14).

During the collaboration with the TSA, Messrs. Cuong, Gormick, and Shortt

Lathrop GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

received guidance and participated in numerous discussions and meetings with representatives from the TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, modifying, and refining laptop bags that are encompassed by the claims of the '578 Patent.  (*Id.* at 9:15–19).

Further, Messrs. Cuong, Gormick, and Shortt participated in conference calls with TSA representatives in which the TSA provided further guidance regarding suitable Checkpoint Friendly laptop bag designs, including specific laptop bag features, materials, fasteners, and enclosures required to be qualified as Checkpoint Friendly.  (*Id.* at 9:20–24).

Messrs. Cuong, Gormick, and Shortt met with TSA representatives at a pilot airport site to receive direct input and feedback from the TSA regarding specific laptop bag designs that are covered by the subject matter of the '578 Patent.  (*Id.* at 9:25–28).

On February 13, 2009, prosecuting attorney, John R. Thompson, filed a U.S. patent application on behalf of Plaintiff, seeking to cover subject matter resulting from the collaboration with the TSA, naming Cuong, Gormick, and Shortt as inventors.  (*Id.* at 10:1–3).

Everki alleges that attorney Thompson was aware of the TSA RFI no later than February 13, 2009.  (*Id.* at 10:4–5).  Everki further alleges that the TSA RFI was the impetus of and motivation for the alleged invention; the TSA RFI was published and was widely reported; Plaintiff, the inventors, and Thompson all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009; the patent application makes reference to "the policy under the Transportation Security Administration (TSA)," "screening policies of the TSA," and "expedited procedures" to "allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700;" and Plaintiff participated in TSA's program related to the TSA RFI for nearly a year prior to the filing of the application on February 13, 2009.  (*Id.* at 10:5–13).  The application issued as the '578

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

Patent on October 29, 2013.  (*Id.* at 10:14).

Everki alleges that the TSA RFI is prior art under pre-AIA 35 U.S.C. § 102(a) because the purported invention of the '578 Patent, or material aspects of it, was known by persons at TSA and described in the TSA RFI, which is a printed publication in the United States, before the purported invention thereof by the named inventors on the '578 Patent.  (*Id.* at 10:15–19).

Everki specifically alleges several reasons why the TSA RFI was material to the patentability of the subject matter claimed in the application that resulted in the issuance of the '578 Patent, and the issued claims of the '578 Patent: (1) the disclosures of the TSA RFI, including: "A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt.  One side of the bag would be designed to hold the laptop and nothing else. . . . A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables. The accessories would be in a separate compartment;" (2) Cuong, Gormick, and Shortt's participation in a collaboration with the TSA to conceive of, design, and develop the subject matter claimed in the '578 Patent; (3) the TSA's specific guidelines, requirements, and restrictions for Checkpoint Friendly laptop bags; and (4) the TSA's contributions to the laptop bag designs that are covered by the '578 Patent. (*Id.* at 10:20–11:3).

Everki also alleges that the materiality of these disclosures is reflected in the claims of the '578 Patent and supported by the prosecution history of the '578 Patent. For example, Everki alleges that the applicants, for the purpose of patentability and to overcome a rejection made by the examiner, amended the application's claims to add the limitation that "the second storage section" has a pouch having "a computer disposed therein" that is "configured without an additional pouch."  (*Id.* at 11:5–9).  In addition, for the purpose of patentability and to overcome a rejection made by the examiner, the applicants amended the application's claims to add the limitation that "wherein in the unfolded configuration with the outer sides of both the first and

Lathrop GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section." (*Id.* at 11:9–15).

Everki further alleges that the applicants distinguished prior art cited by the patent examiner by stating that "the purpose" of the design of the purported invention of the '578 Patent "is to isolate the computer in the second storage section to facilitate scanning." (*Id.* at 11:15–18). The applicants distinguished additional prior art cited by the patent examiner because the prior art was purportedly "not concerned with isolating a computer to facilitate scanning," and distinguished additional prior art cited by the patent examiner because it purportedly had "additional components [that] provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer." (*Id.* at 11:18–23). The applicants further distinguished additional prior art by representing: "The claim limitations reflect the purpose of the pending application which is to isolate a computer in the second storage section to facilitate scanning." (*Id.* at 11:23–26).

However, Everki alleges that applicants withheld the prior art disclosures made by the TSA, including in the TSA RFI, that disclosed a bag design that isolated the computer in a storage section, and that was to be opened and laid horizontally during screening so as to allow uninhibited screening of a computer. (*Id.* at 11:26-12:1).

Everki further alleges that, but for Cuong, Gormick, Shortt, and prosecuting attorney Thompson's failure to disclose at least this material information to the PTO, the '578 Patent would not have issued. (*Id.* at 12:2–4). This constituted egregious misconduct. (*Id.* at 12:5).

In addition, Everki alleges that Cuong, Gormick, and Shortt, and prosecuting attorney Thompson knowingly withheld this material information with the specific intent to deceive the United States Patent and Trademark Office ("PTO"), because they failed to disclose to the PTO Cuong, Gormick, Shortt, and Targus's collaboration

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

with the TSA in conceiving of, designing, and developing the subject matter of the '578 Patent.  (*Id.* at 12:6–11).  The TSA RFI issued seven (7) days prior to applicants' initial provisional patent application referenced in the '578 Patent.  (*Id.* at 12:11–12).  Everki further alleges that the TSA RFI was the material impetus for the purported invention claimed in the '578 Patent in that it provided a "standard" (as Plaintiff acknowledges) for allowing laptop computers to remain within bags during airport screening and provided examples of such bags that included material characteristics that were subsequently included by the '578 Patent applicants in claims and arguments to the PTO.  (*Id.* at 12:12–17).  Yet, the '578 Patent applicants represented to the PTO that "[w]hen traveling through airport security, it is the policy under the Transportation Security Administration (TSA) to remove portable computers from luggage, cases, and the like" ('578 Patent at 2:16–18), which is a misrepresentation in view of TSA's public pronouncement that it would allow laptop computers to remain in bags during screening as part of the program announced in the TSA RFI.  (Dkt. 14 at 12:17–23).

Everki also alleges that Plaintiff stated in a press release, that: "[Plaintiff's] Zip-Thru case is designed to meet guidelines established by Transportation Security Administration (TSA), which focus on the screeners' ability to get a clear image of the laptop when properly secured in the bag.  In developing the Zip-Thru case, [Plaintiff] worked in conjunction with TSA authorities to test the product through an actual airport screening device."  (*Id.* at 12:24–13:1).[4]

Based on Plaintiff's above conduct, Everki alleges that the claims of the '578 Patent are unenforceable under the doctrines of inequitable conduct and unclean hands.  (*Id.* at 13:2–3).

## III.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(f), a court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

[4] The pleading directs the Court to the publicly available article.  (Dkt. 14 at 13, n.3).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

"Motions to strike, as a general rule, are disfavored."  *Daniel v. Lennar Corp.*, No. 8:19-cv-00452-JLS-DRM, 2019 WL 8194735, at  *2 (C.D. Cal. Oct. 16, 2019) (denying motion to strike) (Staton, J.); *Beal v. Lifetouch, Inc.*, No. CV 10–8454–JST (MLGx), 2011 WL 995884, at *7 (C.D. Cal. Mar. 15, 2011) (same) (Staton, J.).  "This is because they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." *Lennar Corp.*, 2019 WL 8194735, at *2 (internal quotations and citations omitted).  Thus, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* (internal modifications and quotes omitted).

Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed.  *Preservation Techs. LLC v. Mindgeek USA Inc.*, No. CV-17-8906-DOC(JPRx), 2019 WL 8137707, at *2 (C.D. Cal. Nov. 17, 2019) (denying motion to strike).  "In determining whether to grant a motion to strike, a district court views the pleadings in a light most favorable to the non-moving party, and resolves any doubt as to the sufficiency of a defense in defendant's favor." *Fed. Deposit Ins. Corp. v. Reis*, No. SACV-12-2212-JST(ANx), 2013 WL 12126777, at *2 (C.D. Cal. Sept. 5, 2013) (Staton, J.) (citing cases; internal modifications omitted).  Generally, "a motion to strike will not be granted absent a 'showing of prejudice to the moving party." *Id.*

## IV.    ARGUMENT

### A.    Pleading Standard for Inequitable Conduct.

To plead inequitable conduct, a party must allege: (1) "an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact," and (2) "did so with a specific intent to deceive the PTO." *Preservation Techs.*, 2019 WL 8137707, at 2 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009)).  Inequitable conduct must be pled with particularity under Fed. R. Civ. P. 9(b). *Id.* "The

pleadings must identify the 'who, what, when, where, and how' of the alleged material misrepresentation and offer 'sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.'"  *Id.* at *2.

"At the pleading stage the proponent of the inequitable conduct theory need only plead facts supporting a reasonable inference that a specific individual knew of the misrepresentation and had the specific intent to deceive the PTO."  *Sanders v. The Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011).  "A reasonable inference is one that is plausible and that flows logically from the facts alleged . . ."  *Id.* (quoting *Exergen*, 575 F.3d at 1329 n.5).

As explained below, Everki's detailed allegations are beyond sufficient. Plaintiff's motion improperly seeks to reach the merits and should be denied.

## B.   Everki Adequately Alleges Inequitable Conduct.

As an initial matter, Plaintiff only challenges Everki's allegations on the materiality and intent elements of inequitable conduct.  (Mot. at 3:9–12 (arguing that "Everki's Third Defense fails to plead any facts from which the Court could conclude that the TSA RFI is material or that there was deceptive intent in not disclosing the TSA RFI during prosecution of the '578 Patent"); *see also id.* §§ B(1)–B(2)). Accordingly, Everki focuses on these elements, which Plaintiff has challenged.[5]

### 1.   Everki Adequately Alleges Materiality

Plaintiff improperly challenges the merits, but not sufficiency, of Everki's allegations.  Tellingly, Plaintiff does not dispute that the TSA RFI itself is material— instead, Plaintiff contends that Everki's allegations are insufficient because it is supposedly "plausible" that the TSA RFI is not prior art.  (*See* Mot. at 3:26–28 ("But without the TSA RFI qualifying as prior art, the TSA RFI could not have prevented issuance of the '578 Patent and could not have been material to the prosecution of the

---

[5] Plaintiff does not dispute that Everki adequately alleged the who (the named inventors and attorney Thompson), what (failing to disclose during prosecution the TSA RFI and TSA collaborations), when (during prosecution, including with reference to specific office actions), and where (in communications with the USPTO).

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

'578 Patent."), 4:8–10 ("If, for example, the inventors conceived of their invention prior to March 3, 2008, the TSA RFI was not prior art and therefore could not support an inequitable conduct defense.").  Relying on pure conjecture, Plaintiff contends that it is a "far more plausible interpretation of" the facts "that the inventors had already conceived of their invention and that the TSA RFI was not prior art to their invention."  (Mot. at 4:23–25; *see also id.* at 4:25–26 (arguing that "[t]he pleaded facts do not show that the TSA RFI is prior art")).

At best, Plaintiff's (unsupported) suggestion of an earlier invention date goes to the merits, but that cannot support its Fed. R. Civ. P. 12 motion.  *See Sleep Number Corp. v. Sizewise Rentals, LLC*, No. ED-CV-18-00356-AB(SPx), 2019 WL 3241183, at *3 (C.D. Cal. May 7, 2019) (denying-in-part motion to dismiss inequitable conduct claim and holding that challenge over "whether the Colder Information is prior art" is "better saved for something besides a Rule 12(b)(6) motion."); *Preservation Techs.*, 2019 WL 8137707, at *4 (denying motion to strike inequitable conduct and holding that "[m]any of Plaintiff's arguments, however, go more properly to the truthfulness of the allegations and not their sufficiency . . . Given [the] Court's duty to take all allegations as true and make inferences in favor of the counterclaimants, these arguments are more properly made at a later stage in the litigation.").

In any event, Everki's ***allegations*** are more than sufficient.  Everki ***has alleged*** that "[t]he TSA RFI is prior art under pre-AIA 35 U.S.C. § 102(a) because the purported invention of the '578 Patent, or material aspects of it, was known by persons at TSA and described in the TSA RFI, which is a printed publication in the United States, before the purported invention thereof by the named inventors on the '578 Patent" (Dkt. 14 at 10:15–19), and that "[t]he TSA RFI issued seven (7) days prior to applicants' initial provisional patent application referenced in the '578 Patent"—allegations that are supported by the face of the TSA RFI itself.  (*Id.* at 12:11–12; *see also id.* at 7:10–19, n.1).  Although Plaintiff argues that "Everki fails to allege any invention date for the '578 Patent or any facts that would indicate that the

Lathrop GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

invention date was after issuance of the TSA RFI," (Mot. at 4:2–4), it is incumbent on *Plaintiff*, not Everki, to establish an earlier invention date.  Either way, that is a fact issue explored through discovery.

To be sure, Everki's allegations provide even more detail than similar ones against Plaintiff that survived Fed. R. Civ. P. 12.  *See, e.g.*, *Targus Grp. Int'l, Inc. v. CODi, Inc.*, No. SACV-15-00353-CJC (Ex), 2015 WL 1269220, at *2 (C.D. Cal. Sept. 17, 2015) (denying motion to strike and holding that "[i]t stands to reason that if the '578 Patent simply incorporates the TSA's previously published specifications for compliant bags that existed prior to the patent application, the PTO likely would have considered that publication as an example of prior art in its decision whether to grant the '578 Patent.").

Unlike the conclusory allegations of materiality in *Human Genome Sciences, Inc. v. Genentech, Inc.*, No. 2:11-cv-6519, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011), Everki alleges the specific information that was material to patentability.  (Dkt. 14 at 10:20–11:3).  Everki also identifies specific arguments and amendments to claims made during prosecution to overcome the examiner's rejections, which reflect the materiality.  (*Id.* at 11:4–12:1).  *See Preservation Techs.*, 2019 WL 8137707, at *4 (allegations must provide "reasonable inference" of materiality).

Unable to find any legitimate deficiencies in Everki's pleading, Plaintiff challenges the few allegations Everki makes "on information and belief."  (Mot. at 5:10–27 (contending that "[t]he defense here provides no facts upon which this belief is based other than the timing of the TSA RFI and the initial and subsequent applications, which do not plausibly show that the TSA RFI was the impetus for the claimed invention.")).  Plaintiff's argument lacks merit.  Everki's allegations made "on information and belief" pertain to Plaintiff's collaborations with the TSA, *i.e.*,

information solely within Plaintiff's possession, which, in any event are supported by specific, detailed facts.[6]

Indeed, despite acknowledging that "[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control" and "the pleading sets forth the specific facts upon which the belief is reasonably based," (Mot. at 5:11–15), Plaintiff ***does not*** dispute that such information is only within its possession and unavailable to Everki absent full discovery.  (*See id.*).  Plaintiff cites *Kranos IP Corp. v. Riddell, Inc.*, 334 F. Supp. 3d 907 (N.D. Ill. 2018), but the portion of *Kranos* that Plaintiff cites pertains to pleading *intent*, not materiality.  (Mot. at 5:21–27 (citing *Kranos IP*, 334 F. Supp. 3d at 916)).  Even so, the materiality allegations in *Kranos* failed to "allege facts that lead to the conclusion that the examiner would have denied the application ha[d] she been aware of the omitted prior art reference."  *Kranos*, 334 F. Supp. 3d at 913.  Here, Everki explains how the TSA RFI is prior art and how its prior disclosures are "reflected in the claims of the '578 Patent and supported by the prosecution history," which would have been material to whether the examiner would grant the patent.  (Dkt. 14 at 11:4–12:1).

Aside from the TSA RFI, Plaintiff raises several red herring arguments related to its collaborations with the TSA.  Plaintiff suggests that the collaborations post-dated the TSA RFI and that "the defense has not plausibly alleged that the March 2008 provisional application contains any material from such collaborations."  (Mot.

---

[6] *See, e.g.*, Dkt. 14 at 8:24–25 ("On information and belief, Targus made appointments for the TSA to test bags, and received feedback from the TSA."), 9:15–19 ("On information and belief, during the collaboration with the TSA, Messrs. Cuong, Gormick, and Shortt received guidance and participated in numerous discussions and meetings with representatives from the TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, modifying, and refining laptop bags that are encompassed by the claims of the '578 Patent."), 9:20–28 ("On information and belief, Messrs. Cuong, Gormick, and Shortt participated in conference calls with TSA representatives" and "On information and belief, Messrs. Cuong, Gormick, and Shortt met with TSA representatives at a pilot airport site to receive direct input and feedback from the TSA").

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

at 6:12–7:2).  Plaintiff also contends that "the defense does not identify any subject matter that was added to the application filed in February 2009 that was not in the March 2008 provisional application to which that February 2009 application claimed priority that was gleaned from the alleged collaborations."  (*Id.* at 7:3–6).  These arguments are meritless.

Indeed, there is no dispute that the collaborations occurred before the filing of the utility application (Dkt. 14 at 8:10–16, 9:4–14), and ***Plaintiff*** must establish entitlement to the provisional application's earlier priority date.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305–06 (Fed. Cir. 2008).  If Plaintiff cannot, it is undisputed that the collaboration is a prior disclosure.  To the extent that Plaintiff can, its collaboration with the TSA could be information material to the PTO's decision given Everki's allegation that the named inventors knew that they were not the first to invent the technology for which they sought a patent.  (*See, e.g.*, Dkt. 14 at 10:5–13, 10:15–19, 12:6–11).  *See Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*, No. 3:16-cv-790-SI, 2017 WL 4803938, at *12 (D. Or. Oct. 24, 2017) ("But if [patentee] knew, as [plaintiff] alleges, that [patentee] was not in fact the first to invent the technology for which it sought a patent, that would be information material to the PTO's decision of whether to grant a patent to [patentee]—*regardless of whether [plaintiff's] patent application came before or after [patentee's]*.").  In any event, because the Court must "take all allegations as true and make inferences in favor of the [defendant]," any uncertainty over what was discussed during the collaborations and when they occurred is resolved in Everki's favor *at this stage*, and will be subject to discovery.  *See Preservation Techs.*, 2019 WL 8137707, at *4.

Plaintiff also challenges Everki's allegation that the '578 Patent applicants misrepresented the TSA's policy of removing laptops from luggage despite knowing of the TSA's public pronouncement that it would allow laptop computers to remain in bags as part of the TSA RFI project.  (Mot. at 7:11–23 (citing Dkt. 14 at 12:17–23)).  Without any citations (much less to Everki's allegations), Plaintiff concludes that

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

Lathrop GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

"everyone who has traveled knows that the TSA has such a policy" and "[i]t is the policy of the TSA to require laptops to be removed from bags when going through security." (Mot. at 7:14–16). Plaintiff's say-so is irrelevant on a Fed. R. Civ. P. 12(f) motion and should be disregarded. *See Preservation Techs.*, 2019 WL 8137707, at *2 ("The grounds for the motion to strike must appear on the face of the pleading under attack, or from matters of which the court may take judicial notice.").

In sum, Everki's materiality allegations are more than sufficient and Plaintiff cannot show otherwise.

## 2. Everki Adequately Alleges Intent

"Although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO. *Preservation Techs.*, 2019 WL 8137707, at *4 (citing *Exergen Corp.*, 575 F.3d at 1328–29) (modifications omitted). "A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Id.* "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

Plaintiff selectively cites one paragraph of Everki's pleading, conveniently omitting many of Everki's factual allegations. (Mot. at 7:27–8:4). However, Everki's allegations provide detailed factual support well beyond Plaintiff's cherry picking. For example, Everki alleges that the TSA RFI issued shortly before the first provisional application was filed, that the TSA RFI was the material impetus for the purported invention since it set the standard for checkpoint friendly laptop bags (which Plaintiff admits), and that the named inventors failed to disclose their collaborations with the TSA concerning the claimed invention. (Dkt. 14 at 9:5–14,

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

10:5–13, 12:11–17, 12:24–13:1).  Such allegations "suffice to give rise to a reasonable inference, at least for the purposes of this motion, that they intended to deceive the PTO." *Targus Grp. Int'l, Inc. v. CODi, Inc.*, No. SACV-15-00353-CJC (Ex), 2015 WL 1269220, at *2 (C.D. Cal. Sept. 17, 2015) (holding that "allegations that Cuong, Gormick, and Shortt met with TSA representatives to discuss specific technical requirements of compliant bags and received feedback on bag prototypes, but failed to disclose that collaboration in their patent application" sufficiently alleged intent).

Plaintiff contends that Everki "pleads no facts that would plausibly infer that any information was withheld with an intent to deceive the PTO."  (Mot. at 8:5–6).  However, Plaintiff does not actually challenge Everki's pleading of either element bearing on intent.  Nor does Plaintiff legitimately challenge the sufficiency of Everki's allegations with respect to the TSA RFI.  (*See* Mot. at 7:25–9:15).  Plaintiff merely concludes that "[t]aking all facts alleged as true, it is more plausible that the TSA RFI was not material, and there was no deceptive intent."  (*Id.* at 9:4–5).  But such tenuous assertions regarding the TSA RFI cannot overcome Everki's well-pled allegations. *See Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (defendant must merely show that it is reasonable to infer a specific intent to deceive); *Seville Classics, Inc. v. Neatfreak Grp., Inc.*, No. CV-15-06237-SJO (ASx), 2016 WL 6661176, at *4 (C.D. Cal. Apr. 1, 2016) ("The 'single most reasonable inference' standard governs what needs to be shown to prevail on an inequitable conduct claim, not what is needed to survive a Rule 12 motion.").

Plaintiff's arguments as to the TSA collaborations fare no better.  Reiterating its arguments against materiality, Plaintiff contends that the defense is insufficient because it "alleges that the March 2008 provisional application was filed before any of the alleged collaboration with the TSA occurred" and the "defense does not even allege what material was allegedly derived from collaboration with the TSA."  (Mot. at 8:7–12).  As explained, Everki alleges (and Plaintiff does not dispute) that the collaborations occurred before the ***'578 Patent's filing date***, and it is Plaintiff's

burden to demonstrate entitlement to an earlier priority date. *PowerOasis*, 522 F.3d at 1305–06. Further, the substance of Plaintiff's collaborations with the TSA are subject to discovery and are inappropriate to resolve on this motion. *See Preservation Techs.*, 2019 WL 8137707, at *2 ("this Court will still take all Defendants' allegations as true at this stage of the litigation. The allegations are sufficient to allow this court to reasonably infer knowledge and intent to deceive."); *Seville Classics*, 2016 WL 6661176, at *4 ("when ruling on a Rule 12 motion, the Court must take the facts alleged as true and construe them in the light most favorable to nonmovants. Under this lens, the Court can reasonably infer that Seville and its prosecution attorney engaged in conduct with the intent to deceive the PTO.") (citations omitted).

Lastly, Plaintiff purports that Everki's "assertion of intent is implausible" because the '578 Patent references the TSA's screening policies and "[i]t is implausible that an applicant attempting to hide TSA's contribution would refer to the TSA's screening procedures in the application itself." (Mot. at 8:24–26). This is a red herring. Everki does not allege that Plaintiff disclosed the TSA RFI, but rather that it ***did not disclose*** the TSA RFI—despite disclosing the TSA's other screening policies. (Dkt. 14 at 9:9–12). This supports the sufficiency of Everki's intent allegations.

Plaintiff's reliance on *Bayer Cropscience AG v. Dow Agrosiences LLC*, C.A. No. 10-1045 (RMB/JS), 2012 WL 1253047 (D. Del. Apr. 12, 2012) is misplaced. (Mot. at 8:26–9:2). In *Bayer*, the defendant alleged that during prosecution of the patent-in-suit, a named inventor was one of the authors of an article that described the tfdA gene as a dioxygenase, yet the patent-in-suit claimed the tfdA gene was a monoxygenase. *Id.* at *1. As a secondary reason for finding the specific intent allegations were insufficient, the court noted that the fact that the named inventor published an article with this information during prosecution of the patent was at odds with the allegation that the named inventor deliberately withheld the information with specific intent to deceive the PTO. *Id.* at *5.

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067

Here, the '578 Patent's references to the TSA screening process do not indicate that the purported invention resulted from review of the TSA RFI or Plaintiff's TSA collaboration.  Instead, they indicate that the named inventors included the claimed features hoping that those features would allow a user to move more quickly through the TSA screening process without removing the laptop, *as if the named inventors developed this concept*.  *See* '578 Patent Col. 7:38–59.  Unlike in *Bayer*, the named inventors and Mr. Thompson did not tell the world (or the PTO) of the TSA RFI or TSA collaboration.  Rather, the inventors took credit for the prior art, which further supports the inference of applicants' specific intent to deceive the PTO.

## V.     CONCLUSION

Plaintiff's motion misapplies the proper standard under Fed. R. Civ. P. 12(f) and ignores many of Everki's detailed factual allegations.  As set forth above, Everki has sufficiently alleged its third affirmative defense of inequitable conduct.  Everki respectfully requests that Plaintiff's motion be denied in its entirety.

Dated: October 9, 2020                    Respectfully submitted,

By: */s/ Erica J. Van Loon*
Erica J. Van Loon
State Bar No. 227712
Andrew Y. Choung
State Bar No. 203192
Daniel A. Kadin
State Bar No. 311471
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601
erica.vanloon@lathropgpm.com
andrew.choung@lathropgpm.com
daniel.kadin@lathropgpm.com

*Attorneys for Defendant Everki USA Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I caused the foregoing Defendant Everki USA, Inc.'s Opposition to Plaintiff's Motion to Strike Third Affirmative Defense to be served on the following individuals via CM/ECF:

Michelle E. Armond: michelle.armond@armondwilson.com

Forrest M. McClellen: forrest.mcclellen@armondwilson.com

Douglas R. Wilson: doug.wilson@armondwilson.com


*/s/ Erica J. Van Loon*
Erica J. Van Loon
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601
daniel.kadin@lathropgpm.com

*Attorneys for Defendant Everki USA Inc.*

**Lathrop GPM LLP**
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067